# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3285 | **DATE** | 8/10/2000 |
| **CASE TITLE** | Celozzi et al vs. Boot et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Plaintiff's request for default judgment and defendants' motion (Doc 7-1) to dismiss for lack of personal jurisdiction are denied. We grant defendants' motion (Doc 7-2) to transfer the dispute to the Central District of California. Order cause transferred to the U.S. District Court for the Central District of California.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

SCT courtroom deputy's initials

ED-7
FILED FOR DOCKETING

00 AUG 10 PM 4: 56

Date/time received in central Clerk's Office

number of notices

AUG 14 2000
date docketed

docketing deputy initials

date mailed notice

mailing deputy initials

Document Number

12

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS CELOZZI  JR., an individual and CELOZZI FILMS, INC., an Illinois corporation, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 00 C 3285 |
| MARK BOOT, individually, and as Agent of SANTELMO ENTERTAINMENT, INC., a California corporation, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

DOCKETED
AUG 11 2000

CHARLES P. KOCORAS, District Judge:

This case comes before the Court on a Motion for Default Judgment by Plaintiffs Nicholas Celozzi, Jr. and Celozzi Films, Inc. ["Celozzi"] and a Motion to Dismiss for Lack of Personal Jurisdiction, or in the alternative, a Motion for Transfer of Venue, by Defendants Mark Boot ["Boot"] and Santelmo Entertainment, Inc. ["Santelmo"] [hereafter collectively "Defendants"].  For the reasons set forth below, this Court denies Celozzi's Motion for Default Judgment, denies Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, and grants Defendants' Motion for Transfer.

# BACKGROUND

The following facts have been gleaned from the Complaint and responses. Around February 2000, Celozzi traveled to California on a personal visit and spoke with Boot about producing and distributing Celozzi's project, a film by the name of "On the Wire" ["the Film"] (also referred to as "On a Wire" in the Complaint). Celozzi and Celozzi Films, Inc. are domiciled in Illinois. Boot and Santelmo are residents of California. After the initial conversation, a series of negotiations took place, some over the phone, some held in person in California, from which the parties produced an outline of an agreement. The substance of the agreement was that Celozzi agreed to finance the production of the film in exchange for Santelmo producing the film and distributing it after production. After initial payments totaling $73,000, Celozzi declined to further finance the venture in apparent response to representations by Boot and Santelmo that the production could not be accomplished for the amount discussed in the agreement and that they would not be responsible for any costs incurred beyond the original investment by Celozzi. As a result, Celozzi filed a complaint against Boot and Santelmo alleging Breach of Contract, Fraud, and a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. ["Consumer Fraud Act"], on May 31, 2000.

The jurisdiction of this court is based on diversity, and this case meets the amount in controversy requirement. The complaint was served upon Boot on June 8, 2000, and Celozzi filed for default judgment on June 30, 2000. Defendants filed their answer on July 7, 2000 before this Court had the opportunity to rule on Celozzi's Motion for Default Judgment. In their answer, Defendants moved to dismiss for lack of personal jurisdiction, or in the alternative, transfer of the case to California. This Court will address each issue in turn.

DISCUSSION

## A. Motion for Default Judgment

Celozzi asserts that this case is ripe for default judgment. This Court cannot agree. Given that Defendants have meritoriously responded to Celozzi's complaint, albeit a few days late, but prior to a hearing before this Court, any policy reasons supporting the awarding of default judgment vanish. "The appropriate use of default [is] to ensure that litigants who are vigorously pursuing their cases are not hindered by those who are not, in an environment of limited judicial resources." Swaim v. Moltan Co., 73 F.3d 711, 716 (7th Cir. 1996) (citations omitted). Since default judgment was never entered, the more extensive support required to vacate or appeal a default judgment is not required here. See, e.g. Jones v. Phipps, 39 F.3d 158, 162 (7th Cir. 1994); United States v. Di Mucci, 879 F.2d 1488, 1493-1494 (7th Cir. 1989).

In principle, this Court is extremely reluctant to decide cases by default rather than on the merits. Without any justification to award default judgment, therefore, this Court cannot now do so. Celozzi's Motion for Default Judgment is denied.

## B. Motion to Dismiss for Lack of Personal Jurisdiction

Defendants argue that this Court does not have personal jurisdiction over it because: Defendants never traveled to Illinois; they did not register the corporation in Illinois; they never maintained offices, employees, or agents in Illinois; they never conducted business in Illinois; they did not solicit any business in Illinois, including Celozzi's; all parties signed the contract in California; the parties intended production of the movie to occur in California; and Defendants received two of the three payment checks directly from the hands of Celozzi in California. Celozzi asserts that jurisdiction is proper because: he negotiated with Defendants over the phone from his office in Illinois; the checks Defendants received were drawn on an Illinois bank; Celozzi faxed the outline of the agreement between the parties from his Illinois office; he sent one of the payment checks to California from Illinois; Defendants persuaded Celozzi and his accountant to open a bank account in Illinois to receive revenues from the sale of the movie to be disbursed as both parties saw fit; and Defendants bargained to be the exclusive distributor of the movie for the entire U.S., thereby also including Illinois. This Court finds Celozzi's assertions persuasive.

Rule 12(b)(2) of the Federal Rules of Civil Procedure governs motions to dismiss based upon lack of personal jurisdiction. Under Rule 12(b)(2), the burden of proof rests on the party asserting jurisdiction, but that party need only make a prima facie showing that jurisdiction exists. See Saylor v. Dyniewski, 836 F.2d 341, 342 (7th Cir. 1988). This court must accept all well-pleaded facts as true and resolve all factual disputes in favor of the party asserting jurisdiction. See Id.; Turnock v. Cope, 816 F.2d 332, 333 (7th Cir. 1987).

When a case is before a court on the basis of diversity jurisdiction, a federal district court in Illinois may exercise personal jurisdiction over a nonresident defendant ONLY if an Illinois state court would have jurisdiction. See RAR Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1275 (7th Cir. 1997); Dehmlow v. Austin Fireworks, 963 F.2d 941, 945 (7th Cir. 1992). Under the Illinois long-arm provision, a court may exercise jurisdiction over nonresident defendants, "as to any cause of action arising from the doing of any such acts [as]:

(1)The transaction of any business within this State;

(2)The commission of a tortious act within this State;

* * *

(7)The making or performance of any contract or promise substantially connected
with this State;"

735 ILCS 5/2-209(a).

- 5 -

The Illinois long-arm statute further states, "A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). The Illinois Supreme Court has made clear that the Illinois due process guarantee is not necessarily co-extensive with federal due process protections, meaning a separate inquiry under the Illinois long-arm statute is still necessary. Although the Illinois Supreme Court "may, in construing the Illinois Constitution's guarantee of due process, look for guidance and inspiration to constructions of the Federal due process clause by the Federal courts, the final conclusions on how the due process guarantee of the Illinois Constitution should be construed are for [the Illinois] court to draw." Rollins v. Ellwood, 141 Ill.2d 244, 565 N.E.2d 1302, 1316 (Ill. 1990). Given the relative paucity of illumination into the murky subterfuge over where the lines between the due process clauses of the Illinois and Federal Constitutions are drawn, we look to the discussion of the Federal Due Process for insight as to whether jurisdiction is just. See, e.g., RAR, Inc. v. Turner-Diesel, Ltd., 107 F.3d 1272, 1276-1277 (7th Cir. 1997). Finally, where jurisdiction is predicated on subsection (a), only causes of action arising from the enumerated acts may be asserted against a nonresident defendant. See 735 ILCS 5/2-209(f).

Each of Celozzi's three causes of action must stand on its own for purposes of personal jurisdiction, and this Court finds jurisdiction over each one proper. See Heritage House Restaurants, Inc. v. Continental Funding Group, Inc., 906 F.2d 276, 279 (7th Cir. 1990) (citing Mergenthaler Linotype Co. v. Leonard Storch Enterprises, Inc., 66 Ill.App.3d 789, 799-800, 383 N.E.2d 1379, 1387 (1st Dist. 1978)). Celozzi's first claim is that Defendants breached the contract between the parties. This Court finds the facts of the case meet Illinois long-arm jurisdiction requirements under (a)(7) ("making or performance of any contract"). In Kalata v. Healy, 312 Ill.App.3d 761, 766 728 N.E.2d 648, 652-653 (1st Dist. 2000), the court found the existence of a contract and an exchange of funds between the parties, formed as a result of negotiations over the phone between a party residing in California and a party residing in Illinois, was sufficient to create a prima facie case that there existed a contract substantially connected to Illinois, thereby establishing personal jurisdiction under (a)(7). Neither party, in the present case, disputes the existence of an agreement nor the transfer of funds between the parties. Boot faxed Celozzi an outline agreement, signed by Boot, which Celozzi signed and faxed back to Boot. The agreement was the result of negotiations over the phone between Celozzi in Illinois and Defendants in California, as well as negotiations that took place in California. Furthermore, Celozzi sent and gave checks comprising $73,000 to Defendants, each check having been drawn on an Illinois bank. The checks were

cashed in apparent performance of the contract between Celozzi and Defendants. Seeing the requirements for asserting jurisdiction in Illinois satisfied under (a)(7) of the long-arm statute, this Court is able to assert personal jurisdiction over Defendants for Celozzi's breach of contract claim according to Illinois law.

The other two claims are tort claims based on the same factual issues so as to merit simultaneous and identical treatment. Since the claims are based in tort, they rely on (a)(2) ("tortious injury") for jurisdiction. This Court finds that the assertion of jurisdiction over Defendants is warranted for the tort claims as well. The court in Arthur Young & Co. v. Bremer, 197 Ill.App.3d 30, 36, 554 N.E.2d 671, 676 (1st Dist. 1990) stated:

> In order to sustain jurisdiction based on the commission of a tortious act in Illinois, the plaintiff must allege that the defendant performed an act or omission which caused an injury in Illinois, and that the act or omission was tortious in nature. Alternatively, the requirements of the tortious act provision of the long-arm statute may be met if plaintiff demonstrates an economic injury in Illinois coupled with activity indicating an intent to affect Illinois interests.

Jurisdiction by Illinois long-arm statute is proper when the injury transpires in Illinois, even if all other conduct takes place elsewhere. Stein v. Rio Parismina Lodge, 296 Ill.App.3d 520, 526, 695 N.E.2d 518, 523 (1st Dist. 1998); Habitat Wallpaper and Blinds, Inc. v. K.T. Scott Ltd. Partnership, 807 F.Supp. 470, 473 (N.D.Ill. 1992). As stated in Arthur Young & Co., *supra*, where the injury is economic, the plaintiff must additionally demonstrate an intent to affect an Illinois

interest. <u>See also</u> <u>Real Colors, Inc. v. Patel</u>, 974 F.Supp. 645, 649-650 (N.D.Ill. 1997). In <u>FMC Corp. v. Varonos</u>, 892 F.2d 1308, 1313 (7th Cir. 1990), the court determined that communications by nonresident defendant, coupled with an intent to further her Illinois scheme, was a sufficient basis for jurisdiction, and that making such communications as part of a scheme to defraud an Illinois resident clearly evidenced an intent to affect an Illinois interest. <u>See also</u> <u>Club Assistance Program, Inc. v. Zukerman</u>, 594 F.Supp. 341, 343, 347 (N.D.Ill. 1984). The court in <u>Kalata v. Healy</u>, 312 Ill.App.3d 761, 767, 728 N.E.2d 648, 653 (1st Dist. 2000) found that fraud worked an injury on plaintiff sufficient to generate jurisdiction in Illinois where plaintiff suffered the economic injury in Illinois but all acts in furtherance of the fraud were committed in California. In the case at bar, this Court finds likewise. Celozzi, an Illinois resident, suffered the economic loss of the alleged fraud in Illinois. Telephone calls and faxes were made and materials sent between the parties. It is irrelevant for the purposes of this case that all other activity in furtherance of the fraud may have occurred in California. For the reasons stated above, this Court finds the assertion of Illinois jurisdiction over Defendants via the state long-arm statute proper.

Although inquiry into state jurisdiction law is necessary, it is by no means sufficient. The Due Process clause of the Fourteenth Amendment of the U.S. Constitution limits when a state may assert *in personam* jurisdiction over a

nonresident individuals and corporations. See Pennoyer v. Neff, 95 U.S. 714, 733, 24 L.Ed. 565 (1878). A defendant must have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citations omitted). What the minimum contacts standard means in a particular case depends on whether the jurisdiction asserted is specific or general. See RAR, Inc. v. Turner-Diesel, Ltd., 107 F.3d 1272, 1277 (7th Cir. 1997). General jurisdiction exists when the defendant has "continuous and systematic general business contacts" with the forum state. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Specific jurisdiction exists when the defendant has "'purposefully directed' his activities at residents of the forum" state and when the claim results from injuries that "arise out of or relate to" the defendant's contacts with the forum state. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Given Defendants' uncontradicted averments that they never conducted business in Illinois, do not have agents, offices, employees, or property in Illinois, this Court looks to specific jurisdiction to determine whether assertion of jurisdiction is proper. We find that it is.

In specific jurisdiction cases, we must decide whether a defendant has "purposefully established minimum contacts within the forum State" and consider whether, by traditional standards, those contacts would make personal jurisdiction reasonable and fair under the circumstances. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Crucial to the minimum contacts analysis is showing that the defendant "should reasonably anticipate being haled into court [in the forum state]," See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), because the defendant has "purposefully availed itself of the privilege of conducting activities" there. See Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1238 (1958). Central to this is foreseeability on the defendant's part. See Burger King Corp. v. Rudzewicz, 471 U.S. at 472-474. Contacts that are "random" or "fortuitous" or "attenuated" are not sufficient to establish that a state's exercise over the defendant was foreseeable. See Heritage House Restaurants, Inc. v. Continental Funding Group, Inc., 906 F.2d 276, 283 (7th Cir. 1990). Defendants were clearly aware of Celozzi's Illinois connections. The parties spoke over the phone, faxed each other, and corresponded. The agreement between the parties was made while Celozzi was in Illinois, and Defendants were aware of this. Celozzi's payments to Defendants were drawn on an Illinois bank. Illinois has an interest in

providing a forum for disputes resulting from a business relationship formed between an Illinois resident and a nonresident. See Kavo America Corporation v. J.F. Jelenko & Co., No. 00 C 1355, 2000 WL 715602, at *2-3 (N.D.Ill. June 2, 2000). Most revealingly, Plaintiff's uncontroverted assertion that Boot asked Celozzi's accountant to establish a bank account in Illinois, over which both Boot and Celozzi would maintain some control, for the receipt and disbursement of funds with regard to the movie, clearly suggests that Defendants planned to and did in fact derive tangible benefits from their association with Illinois. Celozzi did not unilaterally place unaware Defendants in contact with the Illinois forum. For Defendants to assert that being subject to Illinois laws is not foreseeable or that being haled before an Illinois court is unexpected is simply unavailing.

## C. Motion to Transfer

28 U.S.C. §1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Defendants assert that this civil action would have been more properly brought in the Central District of California. For the reasons set forth below, this Court agrees.

Federal District courts have discretion to transfer a case if: (1) venue was proper in the transferor court; (2) venue and jurisdiction would be proper in the

transferee district; and (3) the transfer will serve the convenience of the parties and the witnesses as well as the interests of justice. See Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219 n.3 (7th Cir. 1986). The moving party bears the burden of showing that the transferee forum is "clearly more convenient." Id. at 220. The decision to grant or deny a §1404(a) motion to transfer is within the sound discretion of the district court. Id. at 219. In addition, generally venue must be appropriate for each claim of the complaint. See C.H. James & Co., Inc. v. Federal Food Marketers Co., 927 F.Supp. 187, 189 (S.D.W.Va. 1996).

Venue is proper in the Northern District of Illinois. Defendants are properly in the Northern District of Illinois through 28 U.S.C. §1391(a)(2), this being a diversity case. Section 1391(a) reads:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may be brought.

Section 1391(a)(2) is the proper clause under which to analyze venue because (a)(1) applies only when all defendants reside in the same district. For purposes of Section 1391, individuals such as Boot are generally held to reside where they are domiciled.

See 15 Charles Wright & Arthur Miller, FEDERAL PRACTICE AND PROCEDURE §3805 (2d ed. 1986). In Boot's case, he certainly does not reside in Illinois. Further, (a)(3) would only be proper were there was only one valid district in which this action could be brought; however since this court finds both the Northern District of Illinois AND the Central District of California proper venues, analysis is placed under (a)(2).

The issue of whether venue is proper in any particular district does not turn on which district has the most substantial contacts. Instead, it may be resolved by simply asking whether the contacts in this district are, in fact substantial. See Commentary by David D. Siegel to 28 U.S.C. §1391(a)(2) (stating "[T]here may be several districts that qualify as the situs of such substantial activities"). Substantial events giving rise to the claims occurred in the Northern District of Illinois. See, e.g. First Health Group Corp. v. Sanderson Farms, Inc., No. 99 C 2926, 2000 WL 139474, at *2-3 (N.D.Ill., Jan. 31, 2000) (finding "substantial events" for venue in Illinois district where services as per contract were performed in Illinois but substantial events regarding contract formation occurred in Mississippi). For the contract claim, negotiations outlining the shape of the contract occurred between Celozzi in Illinois and Defendants in California. Celozzi tendered monies in furtherance of the performance of the contract drawn from an Illinois bank account. Finally, an account

was set up in Illinois to process the receipt and disbursement of funds over which both parties to the contract were going to have control.

Furthermore, venue under Section 1391(a)(2) may be satisfied by a communication to or form the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action. See Consolidated Ins. Co. v. Vanderwoude, 876 F.Supp. 198, 200-01 (N.D.Ind. 1995) (quoting Sacody Technologies v. Avant, Inc., 862 F.Supp. 1152, 1157 (S.D.N.Y. 1994)). Telephone conversations and faxed documents, including the outline agreement, moved to and from the district satisfying venue requirements for the breach of contract claim.

Venue is proper in the Northern District of Illinois for the fraud claim as well. By Illinois law (as discussed *supra*), the injury resulting from the tort occurred in Illinois. As such, a proper venue is where the injury from tortious conduct is suffered. See Cook v. International Harvester Co., 610 F.Supp. 271, 276 (E.D.Wis. 1985); Aluminal Industries, Inc. v. Newtown Commercial Associates, 89 F.R.D. 326, 329 (S.D.N.Y. 1980). Like the breach of contract claim (*supra*), venue in the Northern District of Illinois is also proper under the tort claim as a result of the communications that took place between Celozzi in Illinois and Defendants in California.

Venue is also proper for both claims in the Central District of California.  <u>See</u>

28 U.S.C. §1391(a)(1) (stating "A civil action ... may ... be brought only in (1) a

judicial district where any defendant resides, if all defendants reside in the same

State").  Defendants state they are residents of the Central District of California and

Plaintiff voices no objections to this assertion.

Jurisdiction over the parties is also proper in the Central District of California.

California's long-arm statute is coextensive with the exercise of jurisdiction under the

Federal Constitution.  <u>See</u> Cal. Civ. Pro. Code §410.10 ("A Court of this State may

exercise jurisdiction on any basis not inconsistent with the Constitution of this State

or of the United States"); <u>Peterson v. Highland Music, Inc.</u>, 140 F.3d 1313, 1317 n.2

(9th Cir. 1998).  Since the parties' contacts with the California forum are more

extensive than the Illinois forum, and this Court found Illinois had personal

jurisdiction over the parties, so too does California have personal jurisdiction over the

parties.  As such, this Court accepts that this lawsuit could be transferred to the

Central District of California if the convenience of the parties and witnesses and the

interests of justice suggest so.

To determine whether the third element of Section 1404(a) has been satisfied,

the court should consider several factors: (a) plaintiff's choice of forum; (b) the

convenience of the parties and witnesses; (c) the situs of material events; (d) the

location of relevant documents and other sources of proof; and (e) the interests of justice. See Pepsico, Inc. v. Marion Pepsi-Cola Bottling Co., No. 99 C 3939, 2000 WL 263973, at *8 (N.D.Ill., Mar. 6, 2000) (citations omitted).

Ordinarily, plaintiff's choice of forum is entitled to substantial weight under Section 1404(a), especially if it is the plaintiff's home forum and substantial events giving rise to the claim occurred in the forum. See United Airlines, Inc. v. Mesa Airlines, Inc., 8 F.Supp.2d 796, 798 (N.D.Ill. 1998). Although this factor weighs in favor of Celozzi, it weighs weakly. The plaintiff's choice of forum is given less weight where another forum bears a stronger relationship to the dispute. See Pepsico, Inc. v. Marion Pepsi-Cola Bottling Co., 2000 WL 263973, at *8 (finding that although substantial events arose in the Northern District of Illinois, the franchise's production facilities, with which the dispute arose, was situated in the Southern District); see also Countryman v. Stein, Roe & Farnham, 681 F.Supp. 479, 483 (N.D.Ill. 1987) (ruling that the plaintiff's choice of forum is given less weight if the cause of action "did not conclusively arise in the chosen forum").

Under Section 1404(a), the convenience of the parties and the witnesses is the most important factor. See Dunn v. Soo Line R.R. Co., 864 F.Supp. 64, 65 (N.D.Ill. 1994). The convenience of the parties is balanced. Plaintiffs would benefit from moving forward with the cause of action in Illinois, whereas Defendants would

find the Central District of California a more convenient forum for litigation. As for witnesses, all relevant witnesses except Plaintiff, his accountant, and a fellow investor in the Plaintiff's company reside in California. To demonstrate the appropriateness of the transfer, the movant must specifically identify the witnesses that he or she intends to call. See Mattsson v. Gerry Wood Products Co., No. 95 C 2314, 1997 WL 158334, at *1 (N.D.Ill. Mar. 31, 1997). Celozzi disputes the relevancy of some of the witnesses, but fails to provide a more convincing reason than:

> the case is very simple, and will rest on the credibility of two witnesses: Nicholas Celozzi, Jr. and Mark Boot. There is not a single witness in the State of California, other than Mark Boot, who knows whether he ever had the intention of guaranteeing the film's budget before, during, or after he had contracted to do so.

The Court does not find this reasoning persuasive, particularly since Defendants supply affidavits of those witnesses they intend to call and summaries of the subject of the testimony of those from whom they do not have affidavits. In addition, the court may consider the relevance of nonparty witnesses who are beyond subpoena power in a particular forum and might need to be compelled to testify as well as the cost to willing witnesses of testifying. See Countryman v. Stein, Roe & Farnham, 681 F.Supp. 479, 483 (N.D.Ill. 1987). We find the factor of the convenience of the witnesses heavily weighs in favor of Defendants.

The situs of material events factor also weighs in favor of Defendants. While material events giving rise to this action occurred in both forums, the assertions proffered by both parties clearly demonstrate that California has a more substantial relationship to the dispute. All face-to-face meetings between the parties occurred in California. Celozzi tendered monies to Defendants in California. A sizeable portion of the events giving rise the alleged fraud occurred in California. The finalizing of the contract between the parties occurred in California. Given the gravity of the locus of events in California, this Court finds this factor weighing for Defendants.

The ease of access to relevant business records does not weigh heavily in favor of either party. The difference between the parties in the amount of documents each possesses located in the respective forums is at best marginal. Furthermore, neither party seems likely to be inordinately burdened by the production and transport of relevant documents to the alternative forum.

The final consideration under §1404(a) is whether transferring venue would serve the interests of justice. Among the factors this Court must consider when addressing this question are the speed at which the case will proceed to trial and the public interest in having a case resolved in a particular forum. See Cody v. DeKalb Sanitary Dist., No. 98 C 6832, 1999 WL 417368, at *3 (N.D.Ill. Jun. 13, 1999); Carillo v. Darden, 992 F.Supp. 1024, 1026 (N.D.Ill. 1998). These factors focus on

the efficient administration of the court system rather than the private considerations of the litigants. See Vandeveld v. Christoph, 877 F.Supp. 1160, 1169 (N.D.Ill. 1995). These factors weigh slightly in favor of Defendants. The docket in the Central District of California is only slightly less congested than that of the Northern District of Illinois. The relevant court management statistics are the median number of months from filing to disposition of civil cases and the median number of months from filing to trial. See Id. According to the Federal Court Management Statistics for 1999, median time between filing and disposition in civil cases was six months in the Northern District of Illinois and seven months in the Central District of California. Further, the average time between filing and trial in civil cases was twenty months in the Central District of California and twenty-eight months in the Northern District of Illinois.

As for the "public interest," the court must evaluate the citizenship of the parties injured by the alleged misconduct, see Countryman v. Stein, Roe & Farnham, 681 F.Supp. 479, 485 (N.D.Ill. 1987), but the administration of justice is better served when "the action is litigated in the forum that is 'closer to the action.'" See Carillo v. Darden, 992 F.Supp. 1024, 1026 (N.D.Ill. 1998) (quoting Paul v. Lands End, Inc., 742 F.Supp. 512, 514 (N.D.Ill. 1990). Illinois has an interest in that its

residents suffered the injury by the alleged misconduct. On the other hand, most of the "action" took place in California. This factor is indeterminate.

Finally, nowhere in his response to Defendants' motion to transfer does Celozzi offer up a coherent or comprehensive opposition to the transfer. To this Court, it is not even clear that Celozzi is opposing Defendants' motion to transfer. Rather, tidbits suggesting that a transfer might be burdensome to Plaintiffs are sprinkled throughout the Complaint. As such, and given the reasons above, this Court cannot but find that California has a stronger claim on the events at issue. The moving party has clearly shown that California is a more convenient venue in which to continue this litigation. This Court concludes, in its discretion, that transfer under §1404(a) to the Central District of California is warranted.

## CONCLUSION

For the reasons set out above, this Court denies Celozzi's Motion for Default Judgment and Defendants' Motion to Dismiss for Lack of Personal Jurisdiction. We grant Defendants' Motion to Transfer the dispute to the Central District of California.

Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated:    August 10, 2000